IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RUBIO-DELGADO, | Case No. 13-cv-03105-SC |
| Plaintiff, | ORDER REQUESTING SUPPLEMENTAL BRIEFING RE: PROPOSED SETTLEMENT |
| v. | |
| AEROTEK, INC., | |
| Defendant. | |

## I. INTRODUCTION

This case involves alleged violations of the Fair Credit Reporting Act ("FCRA"). See 15 U.S.C. § 1681, et seq. Plaintiff Jose Rubio-Delgado purports to represent a class of persons aggrieved by Defendant Aerotek, Inc. ("Aerotek"). Aerotek is a recruiting and staffing agency, and Mr. Rubio-Delgado alleges that Aerotek obtained information about its employees and prospective employees without proper notice and authorization. ECF No. 1 ("Compl.") ¶¶ 2, 5-10. The parties have reached a settlement agreement and now seek the Court's preliminary approval. See ECF

No. 52 ("Mot."). Plaintiffs have moved for preliminary approval of the settlement agreement, and the motion is unopposed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement by a certified class and demands that the settlement be "fair, reasonable, and adequate." When evaluating a settlement agreement that applies to a class, courts may consider some or all of the following factors:

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 963 (9th Cir. 2009).

At the preliminary approval stage, however, the Court need not make a final determination as to the fairness, reasonableness, and adequacy of the settlement. Instead, the Court may grant preliminary approval of a settlement if the settlement agreement

> (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.

Harris v. Vector Mktg. Corp., No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011).

## III. DISCUSSION

The settlement agreement in this case calls for Aerotek to pay $5,000,000. ECF No. 50-2 ("Settlement Agreement") ¶ 27. If enough

class members submit claims, however, the agreement requires Aerotek to make an additional contribution to the settlement fund, enough to ensure that each class member receives $42.32, up to a maximum of $262,500. The agreement provides for Mr. Rubio-Delgado's lawyers to recover up to 25% of the settlement -- $1,250,000, assuming Aerotek is not required to make any additional contribution -- as attorney's fees. Id. ¶ 33. Additionally, the Settlement Agreement indicates that the parties have agreed to pay a total of $5,000 from the settlement fund to the three named plaintiffs. Id. ¶ 34.

The Court has serious concerns about the fairness and adequacy of the settlement. The settlement class includes "[a]ll individuals on whom Aerotek or its agents procured consumer reports for employment purposes in the period beginning two years prior to the filing of the Complaint and continuing through the date the Class list is prepared." Id. ¶ 2. Aerotek's records indicate that the number of class members is about 588,000. Id. The Settlement Agreement provides for the settlement fund to be distributed pro rata (after the deduction of attorney's fees, litigation expenses, settlement administration costs, and incentive awards) to all class members who properly submit claim forms. Id. ¶ 29. If all 588,000 class members were to claim their shares of the settlement, Aerotek would be required to make the maximum possible contribution to the settlement fund, which would contain a total of $5,262,500. Once the proposed attorney's fees and incentive awards are deducted, $3,941,875 would remain in the fund. Thus each class member would receive about $6.70.

Plaintiffs' claim for relief seeks $100 to $1,000 for each

violation of FCRA.  See ECF No. 1 ("Compl.") ¶ 60.  Those amounts are based on the statutory damages provided for by FCRA.  See 15 U.S.C. § 1681n(a)(1)(A).  Plaintiffs also sought punitive damages, costs, and attorney's fees.  Compl. ¶¶ 61-62.  Therefore, even assuming the Court were to deny Plaintiffs' punitive damages claim in its entirety and refuse to award attorneys' fees and costs, the proposed settlement offers each class member 6.7% of the minimum amount recoverable were plaintiffs to prevail at trial, and 0.67% of the maximum recovery.[1]  That is plainly inadequate.  See, e.g., Trombley v. Nat'l City Bank, 759 F. Supp. 2d 20, 25-26 (D.D.C. 2011) (settlement in the range of 17%-24% of potential recovery at

---

[1] Plaintiffs acknowledge that "Defendant's violation is not the sort of violation which includes aggravating factors likely to justify an award over the minimum amount of $100."  Mot. at 21.  That is somewhat puzzling given the allegations in the complaint that "Aerotek has willfully and systematically violated [FCRA]" and "consistently undermined Congress's carefully struck balance, unlawfully placing its business interests above the rights of consumers."  Compl. ¶¶ 7, 15.  Additionally, Plaintiffs allege that "Aerotek's practices violate a fundamental protection afforded to employees under the FCRA, are contrary to the unambiguous language of the statutes, and are counter to longstanding judicial and regulatory guidance."  Compl. ¶ 47.  Finally, Plaintiffs sought punitive damages, which may only be awarded where violation of FCRA is willful.  See Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1332 (9th Cir. 1995).  Rule 11 of the Federal Rules of Civil Procedure provides that Plaintiffs' attorney's signature on the complaint constitutes a representation that the complaint's legal contentions are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law . . . ."  Fed. R. Civ. P. 11(b)(2).  That Rule additionally requires that factual contentions have evidentiary support.  Fed. R. Civ. P. 11(b)(3).  Thus Plaintiffs must have had some basis for believing their allegations against Aerotek and that those allegations supported an award of punitive damages.  Thus it seems that Plaintiffs may either have been disingenuous in authoring their complaint or are being disingenuous now in abandoning their argument about the reprehensibility of Aerotek's behavior.  Either way, the contrast of the language of the complaint with the language in Plaintiffs' motion for preliminary approval creates an additional concern that the Settlement Agreement was the product of collusive negotiations.

trial was within the range of possible approval).

However, the parties anticipate that each class member's share of the settlement fund will be about $40. See Mot. at 20; Settlement Agreement Ex. C at 4. That helps to ameliorate the Court's concern about the adequacy of each class member's share, but it raises a new issue: for each class member to receive $40, only 98,546 class members -- about 17% -- could submit claims. That only such a small portion of the class would receive any compensation at all is equally concerning to the Court.

The fact that the parties apparently expect such a small number of class members to submit claims prompts an important question: why can't the Settlement Agreement simply provide for Aerotek to mail a check to each class member, without requiring class members to submit claim forms? To be sure, courts have approved settlements requiring class members to submit claim forms where class members were difficult to identify, or where calculating each class member's share of the settlement required information the parties did not have. See, e.g., Trombley, 759 F. Supp. 2d at 27 (granting preliminary approval to proposed settlement in part because requirement that class members submit claim forms was not unduly burdensome in light of parties' argument that shares of damages could not be calculated without additional information from class members). Here, neither concern is at issue. Class members are readily identifiable from Aerotek's records, and each class member's share is simply a pro rata portion of the settlement fund (after costs, fees, etc. are deducted). It would be very easy to envision a settlement agreement providing for Aerotek to mail each class member a check for his share of the

settlement fund.  Remaining money left over from checks not cashed within a certain amount time could simply be redistributed to class members who did cash their checks, along the lines of the process already outlined in the Settlement Agreement.  <u>See</u> Settlement Agreement ¶¶ 36-39.

## IV. CONCLUSION

For the reasons described above, the Court is concerned that the proposed Settlement Agreement may be obviously deficient, fail to fall within the range of possible approval, or be the result of collusive negotiations.  At the same time, the Court is cognizant of the well-established policy concerns in favor of settlement.  The Court finds that additional briefing may resolve these concerns and permit preliminary approval of the Settlement Agreement.  Accordingly, Plaintiffs shall file a supplemental brief of no more than fifteen (15) pages within twenty-one (21) days of the signature date of this Order.  That brief should address the Court's concerns with the fairness and adequacy of the Settlement Agreement.  Aerotek may file a supplemental brief as well, of no more than fifteen (15) pages, within fourteen (14) days of the deadline for Plaintiffs' submission.

IT IS SO ORDERED.

Dated: April 1, 2015

_____
UNITED STATES DISTRICT JUDGE